2009 Ark. App. 800

**Richard WILSON, Appellant**

**v.**

**SMURFIT STONE CONTAINER, Appellee.**

**No. CA 09–732.**

Court of Appeals of Arkansas.

Dec. 2, 2009.

348

Osborne & Baker, Fayetteville, by: Ken Osborne, for appellant.

Hardin, Jesson & Terry, PLC, Fort Smith, by: J. Leslie Evitts III and Jeffrey D. Rickard, for appellees.

ROBERT J. GLADWIN, Judge.

This appeal follows the May 26, 2009 decision of the Workers' Compensation Commission affirming and adopting the July 29, 2008 opinion of the Administrative Law Judge, finding that appellant Richard Wilson failed to prove by a preponderance of the evidence that the impairment ratings to his left hand and elbow were associated with his work-related injury and also finding that a thirteen-percent impairment rating was the proper rating for his left wrist. On appeal, appellant argues that the Commission erred in finding that the ratings to his hand and elbow were not associated with his work-related injury. We affirm.

*Facts*

Appellant suffered an admittedly compensable injury on February 6, 2006, while working for appellee/employer. Appellant was driving a forklift, and upon attempting to make a turn, the power steering went out, twisting and jerking his left wrist and hand, causing an injury. Appellant presented to the emergency room at St. Mary's Hospital at 6:10 p.m. on that same evening, after his left hand and wrist became increasingly painful. The emergency physician record indicates that his chief complaint was an injury to his left wrist, causing moderate pain, but showing that there was a normal inspection, that it was nontender, and that he had normal range of motion. The report also indicated that his left hand showed tenderness in the soft-tissue, swelling, and limited range of motion due to the pain. The nurse practitioner's impression was that he had a con-

tusion to the left wrist/hand and a fracture of the left radius. He was discharged to his home that evening.

Appellant was seen by Dr. Konstantin V. Berestnev on February 7, 2006. In a letter dated the same day, Dr. Berestnev stated,

> The patient stated that he was driving a forklift when the power steering went out and jerked his left wrist. He states that he has left wrist pain. On physical examination, his left wrist is swollen compared to the right one. Primarily the swelling is in the projection of the right ulnocollateral ligament. The patient has no pain on extension and flexation in the left wrist, but he has pain on ulnar and radial deviation. The patient has pain to palpitation over the medial and lateral aspect of the wrist. The patient has pain on palpitation of the right ulnocollateral ligament. The patient has a positive Finkelstein's sign, negative Tinel's and Phalen's sign. No pain to palpitation over the thenar and hypothenar space eminence. The patient has good extension and flexion strength in each finger. There are no fractures or dislocations on the x-ray of the left wrist.

Dr. Berestnev recommended the use of a left-thumb-spica splint, medication, stretching exercises, limiting lifting to no more than five pounds with his left hand, and avoiding tight gripping and driving a forklift prior to follow-up one week later.

Appellant underwent an MRI on April 6, 2006, and a letter from Dr. Berestnev dated April 11, 2006, indicates that appellant's pain continued and that he chose to obtain a second opinion from a hand surgeon. He was seen by Dr. Kris Hanby at the Ozark Orthopaedic & Sports Medicine Clinic on May 5, 2006, who referred him to his hand-surgery partner, Dr. Bryan Benafield, Jr. Dr. Benafield first saw appellant on May 10, 2006, at which time they planned for a surgical procedure.

On May 19, 2006, Dr. Benafield performed left-wrist arthroscopy, left-triangle fibrocartilage-complex debridement, and debridement and pinning of lunotriquetral joint for excision of mass left ulnar wrist. He was seen post-operatively, and on June 16, 2006, Dr. Benafield removed the pins that had been inserted in appellant's left wrist. On July 12, 2006, Dr. Benafield x-rayed appellant's left wrist, which indicated good alignment with no problems, and started appellant on physical therapy. On September 28, 2006, Dr. Benafield referred appellant to Darren Bell, a physical therapist at the Sportsman Clinic in Rogers, twice a week for three to four weeks, as well as to obtain an impairment rating prior to his planned release from care. Appellant continued to have pain through his palm, wrist, and forearm, his fingers began pulling downward, and he suffered from diminished mobility and grip problems.

Dr. Benafield determined that appellant reached maximum-medical improvement on October 30, 2006. Dr. Benafield then had an impairment evaluation performed on appellant by Mr. Bell, which included a series of tests and measured the loss of mobility the injury caused to appellant's fingers, hand, and wrist. The evaluation, assessed by the physical therapist and adopted by Dr. Benafield, showed impairment to the fingers and hand as thirty-two[4] percent, the wrist as thirteen percent, and the elbow as one percent. It also reported a total-upper-extremity impairment of forty-two percent and twenty-five-percent impairment of the whole person. This was reported to appellee/employer's carrier, signed and dated by Dr. Benafield on November 30, 2006.

Subsequently, a letter dated December 22, 2006, from Michiele Schrieber, appel-

lee's medical case manager, was sent to Dr. Benafield asking him to readdress the wrist-impairment rating because a portion of the first rating was for the hand and elbow, which were not considered part of the work-related injury. Dr. Benafield responded in a document dated January 10, 2007, to the following question: "What is the impairment rating to the wrist only?" Dr. Benafield answered, "13 percent." Dr. Benafield was also asked, "What does the wrist impairment relate to as a whole person impairment rating?" Dr. Benafield answered, "25 percent." Appellee/employer accepted the thirteen-percent impairment rating and paid benefits based on the impairment to appellant's left wrist on February 7, 2007.

A hearing was held before the ALJ on May 6, 2008, regarding the impairment rating and attorney's fee, and on July 29, 2008, the ALJ issued an opinion finding that appellant failed to prove by a preponderance of the evidence that the ratings to his hand and elbow were associated with his work-related injury and that a thirteen-percent impairment rating was the proper rating for his left wrist.[1] Appellant filed a timely appeal with the Commission on August 4, 2008, and on May 26, 2009, the Commission issued an opinion affirming and adopting the ALJ's opinion. Appellant filed a timely notice of appeal on June 4, 2009, and this appeal followed.

### Standard of Review

Typically, on appeal to this court, we review only the decision of the Commission, not that of the ALJ. *Daniels v. Affiliated Foods Sw.*, 70 Ark.App. 319, 17 S.W.3d 817 (2000). In this case, the Commission affirmed and adopted the ALJ's opinion as its own, which it is permitted to do under Arkansas law. *See Death & Perm. Total Disab. Trust Fund v. Branum*, 82 Ark.App. 338, 107 S.W.3d 876 (2003). Moreover, in so doing, the Commission makes the ALJ's findings and conclusions the findings and conclusions of the Commission. *Id.* Therefore, for purposes of our review, we consider both the ALJ's order and the Commission's majority order.

In appeals involving claims for workers' compensation, this court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *See Kimbell v. Ass'n of Rehab Indus. & Bus. Companion Prop. & Cas.*, 366 Ark. 297, 235 S.W.3d 499 (2006). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether the appellate court might have reached a different result from the Commission; if reasonable minds could reach the result found by the Commission, the appellate court must affirm the decision. *Id.* Where the Commission denies a claim because of appellant's failure to meet his burden of proof, the substantial-evidence standard of review requires that we affirm if the Commission's decision displays a substantial basis for the denial of relief. *Id.* We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Dorris v. Townsends of Ark., Inc.*, 93 Ark.App. 208, 218 S.W.3d 351 (2005).

---

1. In his opinion, the ALJ states that "[i]t is clear that when Dr. Benafield stated the whole person impairment at 25 percent, he included the ratings given to the hand, wrist, and elbow even though the question asked of him was to only consider the elbow." Although neither party takes issue with this statement, we note that the reference to the "elbow" was a scrivener's error, as the question asked related to the "wrist."

Questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Patterson v. Ark. Dep't of Health*, 343 Ark. 255, 33 S.W.3d 151 (2000). When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and to determine the true facts. *Id.* The Commission is not required to believe the testimony of the claimant or any other witness, but may accept and translate into findings of fact only those portions of the testimony that it deems worthy of belief. *Id.* The Commission has the authority to accept or reject medical opinions, and its resolution of the medical evidence has the force and effect of a jury verdict. *Poulan Weed Eater v. Marshall*, 79 Ark.App. 129, 84 S.W.3d 878 (2002). Thus, we are foreclosed from determining the credibility and weight to be accorded to each witness's testimony. *Arbaugh v. AG Processing, Inc.*, 360 Ark. 491, 202 S.W.3d 519 (2005). As our law currently stands, the Commission hears workers' compensation claims de novo on the basis before the ALJ, and this court has stated that we defer to the Commission's authority to disregard the testimony of any witness, even a claimant, as not credible. *See Bray v. Int'l Wire Group*, 95 Ark.App. 206, 235 S.W.3d 548 (2006).

### Discussion

The determination of the appropriate impairment rating is the central issue in this appeal. It is undisputed that between the two ratings provided by Dr. Benafield to appellee/employer's carrier, there were no additional tests or measurements performed. Appellant received a letter indicating that he would be receiving a rating only on his wrist. Although appellee/employer accepted and paid the second, wrist-only impairment rating of thirteen percent, appellant urges that his actual impairment is forty-one percent to the upper extremity, as originally opined by Dr. Benafield. He argues that by affirming and adopting the ALJ's opinion, the Commission misinterpreted the nature of his injury and erroneously reduced the impairment rating.

The ALJ found, and the Commission affirmed and adopted the finding, that the medical records do not support appellant's claim that he has compensable difficulties with his left hand, with the only in-depth reporting of a hand injury coming from the impairment-evaluation report from Mr. Bell, the physical therapist, that found a thirty-two-percent rating to appellant's hand. Great weight was afforded to the lack of medical evidence or postoperative complaints in the medical records about appellant's alleged difficulties with his hand.

Appellant counters that the complaints regarding his hand go back to the original emergency-room report from the date of his undisputed compensable injury, and included pain, tenderness, and swelling. The emergency-room physician eventually diagnosed him with a contusion to his left hand and wrist. In addition to appellant's testimony regarding the pain in his hand and the downward pulling of his fingers, appellant also testified that Mr. Bell, his physical therapist, rendered treatment to his hand, wrist, and forearm.

Arkansas Code Annotated section 11–9–704(c)(1)(B) (Repl.2002) provides that any determination of the existence or extent of physical impairment shall be supported by objective and measurable physical or mental findings. Appellant points out that the admittedly compensable injury was not to the structure of the wrist but to the luno-triquetral ligament, the ulnar ligament, and what Dr. Benafield described as the "TFCC" (triangular fibrocartilage complex). The TFCC is a segment of carti-

lage in the wrist joint, and is considered the "wrist meniscus," because it functions very similarly to the knee meniscus. It is made up of a small piece of cartilage and ligaments on the little-finger side of the wrist that connects the little finger to the forearm bone. He submits that an injury to this part of the wrist would necessarily affect his ability to use his hand and fingers. Appellant specifically testified at the hearing that, following the injury, his fingers were starting to pull downward and his mobility was decreased. He was asked to demonstrate these difficulties at the hearing and asserts that they were present and visible to the ALJ.

Appellant argues that he is entitled to permanent-disability benefits based on the degree that the injury impaired his body function. He maintains that his injury was to the ligaments and other soft tissue that passes through his wrist and allows movement of his fingers, and that the injury to this part of his body has caused an impairment to the function of his wrist, hand, and forearm. He urges that his ongoing difficulties with his left hand are the result of the admittedly compensable injury, and he claims he should be awarded permanent-disability benefits for the forty-one-percent rating given by Mr. Bell and originally adopted by Dr. Benafield.

Appellant claims that none of these difficulties were present prior to the admittedly compensable injury and resulting surgery. He submits that Dr. Benafield's expertise in this area is unquestioned, as he is a board-certified orthopedic surgeon specializing in injuries to the hand and wrist. Appellant maintains that Dr. Benafield understood the full effects of the type of injury appellant sustained and fully evaluated the degree of impairment he suffered as a result. He considered the effects that the surgical repair of the torn ligaments and tendon had on the move-ment of appellant's hand and fingers, and initially assessed the appropriate impairment rating of forty-one percent to his upper extremity. Appellant contends that the Commission should not be substituting its medical judgment for that of Dr. Benafield.

Appellant must overcome two burdens to obtain permanent-disability benefits for his alleged left-hand impairment. First, he must prove that his left hand was permanently impaired as a result of the February 6, 2006 work-related incident. Second, he must prove that the impairment rating was based on objective findings. Appellee asserts that none of the medical records show any permanent physical impairment of appellant's left hand or fingers, and appellant failed to present any other objective evidence of such an impairment.

During the hearing before the ALJ, appellant described the forklift injury as causing trauma to his left wrist—not his hand, and this is supported by the medical records. Appellant subsequently submitted a claim for workers' compensation benefits, accompanied by five related physician reports, none of which indicated any problem with appellant's hand or fingers. Appellee acknowledges that the only medical record that even suggests a problem with appellant's left hand is the report from the February 6, 2006 emergency-room visit, which indicates that appellant's chief complaint was the left-wrist injury with some pain and swelling in the area of the left wrist and hand. During that visit, an x-ray was taken of appellant's hand, which indicated no fracture, subluxation, dislocation, or soft-tissue abnormality. The temporary pain, swelling, and bruising noted on the day of the accident is consistent with the trauma sustained to his left wrist in the forklift accident and does not

appear to be the result of an acute injury to appellant's left hand.

Dr. Berestnev's subsequent records address only problems with appellant's left wrist, and following the April 6, 2006 MRI, appellant was referred to Dr. Hanby. Dr. Hanby's report indicated that appellant reported pain at the ulnar aspect of his wrist—the area in which a large cyst was discovered by the MRI—with no mention of pain or problems in his hand or fingers. After diagnosing appellant with ulnar-wrist pain with large cyst and possible triangular-fibrocartilage complex and luno-triquetral tear, Dr. Hanby referred appellant to Dr. Benafield, who eventually performed surgery on appellant's wrist on May 19, 2006. Throughout appellant's rehabilitation and follow-up appointments, the focus was solely on his wrist.

The next mention of any issues other than appellant's wrist does not occur until the impairment rating. The claim for additional permanent-physical-impairment benefits is based on the October 20, 2006 range-of-motion test of appellant's fingers performed by Mr. Bell as part of the impairment evaluation. The affected ligaments or structures concern wrist stability and movement, rather than the extension or flexion of the fingers. We note that appellant's treating physicians performed similar, if not identical, evaluations over the months of treatment, yet all of them confirmed a normal range of motion and strength in appellant's fingers.

Appellant bears the burden of proving that the alleged decrease in range of motion of his left fingers had a causal connection to the February 6, 2006 work-related incident or the resulting surgery. Appellant failed to cite any medical authority for such a connection, instead presenting only his own testimony and his subjective responses to active range-of-motion testing. This evidence is insufficient to establish entitlement to additional permanent-disability benefits. Ark.Code Ann. §§ 11–9–704(c)(1)(B), 11–9–102(16)(A)(i) (Repl.2002). Although passive range-of-motion tests are conducted by the examiner and can be objective evidence of a mechanical defect, active range-of-motion tests are subjective in nature because they are entirely within the voluntary control of the patient. The results of such tests cannot form the basis of a valid impairment rating. *See Hayes v. Wal–Mart Stores,* 71 Ark.App. 207, 29 S.W.3d 751 (2000).

Here, the rating in question was determined after the physical therapist, Mr. Bell, evaluated the range of motion—through active rather than passive testing—of each of appellant's fingers on his left hand. As per appellant's own testimony, the results were based upon appellant's subjective active movement of his own fingers, and thus cannot provide the basis for a valid rating. *See id.* Accordingly, we hold that he has failed to present objective evidence of his alleged left-hand permanent impairment.

Additionally, we hold that there is a lack of support for appellant's contention that appellee's carrier somehow improperly influenced Dr. Benafield to change the impairment rating. The record before us indicates that the carrier merely pointed out that appellant had sustained only a wrist injury as a result of the February 6, 2006 incident. Had Dr. Benafield been of the opinion that appellant had also sustained a left-hand injury, he could have responded with an opinion that appellant was entitled to the additional impairment rating. Instead, he limited the impairment rating solely to the wrist.

Affirmed.

GLOVER and BROWN, JJ. agree.